# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

In re:

Scott Fair,
Roseanna Fair,

        Debtors

Case No. 09-10008-SSM

Chapter 7

## MOTION TO DISMISS PURSUANT TO 11 U.S.C. § 707(b)

Comes Now, W. Clarkson McDow, Jr., United States Trustee, and moves the court to dismiss this case because the granting of relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code pursuant to Section 707(b)(1) and (3).[1] In support of this motion the following representations are made:

### Jurisdiction

(1)    The court has authority to hear and decide this matter. 28 U.S.C. § 1334(a) and (b).

(2)    This is a core proceeding. 28 U.S.C. § 157(a) and (b)(1).

### Statement of Facts

(3)    On January 2, 2009, the debtors filed a petition for relief under chapter 7 of the

---

[1] The United States Trustee has filed a motion to extend the time to file a motion to dismiss this case pursuant to § 707(b)(1) and (3). [Document # 20] A hearing on the motion to extend the time is scheduled for May 19, 2009.

Bankruptcy Code. [Document # 1]

(4) The debtors' debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose." [Document # 1].

(5) The debtors' household size is four. *Schedule I* [Document # 16]

(6) Scott Fair is employed in auto sales. Roseanna Fair is employed in membership consulting for a health club. *Schedule I* [Document # 16].

(7) The debtors have one parcel of real estate, their house. The amount of the secured claim on their house is $392,000. *Schedule A-Real Property* [Document # 16]. The debtors intend to surrender their house. *Chapter 7 Individual Debtor's Statement of Intention* [Document # 6].

(8) The debtors have no unsecured priority claims and $103,694 in unsecured nonpriority claims. *Summary of Schedules* [Document # 16].

(9) The debtors' combined monthly gross wages, salary and commissions is $9,396. *Schedule I-Current Monthly Income of Individual Debtor(s), line 1* [Document # 16]

(10) The debtors listed the following as payroll deductions. *Schedule I, line 4* [Document # 16]:

| 4. LESS PAYROLL DEDUCTIONS | Debtor | Spouse |
|---|---|---|
| a. Payroll taxes and social security | $2,090.45 | 395.02 |
| b. Insurance | 645.91 | 0.00 |
| c. Union dues | 0.00 | 0.00 |
| d. Other (Specify) 401k | 278.91 | 0.00 |
| Loan Repayments | 173.16 | |

(11) The debtors' combined average monthly income is $5,812. *Schedule I, line 16* [Document # 16].

(12) The debtors did not describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of Schedule I. *Schedule I, line 17* [Document # 16].

(13) The debtors' monthly net income is $389. *Schedule J-Current Expenditures of Individual Debtor(s), line 20c* ]Document # 1].

(14) The debtors' monthly net income, $389, times 60 equals $20,340, or approximately 20% of their nonpriority unsecured claims.

## Argument

### Summary

The debtors by their own calculation have the financial means to repay a substantial portion of their debts. Congress, in its wisdom, decided such individuals should do just that: repay their debts. *In re Price,* – F.3d. – 2009 WL 975796 (4th Cir. 2009) ("Congress undoubtedly did intend the BAPCPA to benefit unsecured creditors - by requiring those debtors with sufficient means to file under Chapter 13 rather than Chapter 7 ...") Granting individuals who can repay their debts a chapter 7 discharge would be an abuse.

(15) The court may dismiss a case if it finds that the case was filed in bad faith or under the totality of the circumstances the debtor's financial situation demonstrates abuse. Section 707(b)(3)(A) and (B) states:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption ... does not arise or is rebutted, the court shall consider-

    (A) whether the debtor filed the petition in bad faith; or
    (B) the totality of the circumstances (including whether the
  debtor seeks to reject a personal services contract and the financial
  need for such rejection as sought by the debtor) if the debtor's
  financial situation demonstrates abuse.

  (16) Congress, by the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), made two significant changes to prior law. First, it reduced the threshold for dismissal from "substantial abuse" to simply "abuse." Second, it eliminated the presumption in favor of discharge of the debtor.

  (17) The change from the prior law's standard of "substantial abuse" to "abuse" was part of the overall effort by Congress to stem the increase in personal bankruptcy filings, reduce the "significant losses asserted to be associated with bankruptcy filings" that are borne by the general public, and close or reduce "the loopholes and incentives that allow and - sometimes - even encourage opportunistic personal filings and abuse." H.R. Rep. 109-311 at 91-92 (2005).

  (18) BAPCPA eliminated the presumption in favor of the debtor's discharge that was the underpinning of the court's conclusion that ability to pay alone was an insufficient basis for dismissal of a debtor's chapter 7 case.

  (19) Other courts have noted that the standard for abuse under BAPCPA is lower than the prior law's "substantial abuse" standard, and that the debtor's ability to repay a portion of his or her unsecured nonpriority debt may constitute abuse under 11 U.S.C. § 707(b)(3). *See In re Mestemaker,* 359 B.R. 849, 855, (Bankr. N.D. OH 2007) ("the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion to dismiss based on abuse where the presumption does not arise or is rebutted.")

(20) The court should also consider that the debtors' Schedule I is not accurate. The debtors deducted $173 for loan repayments and $278 for 401k contribution.. It is not clear what this loan repayment is for but most likely there was no legal obligation to continue paying. If that is the case, the loan should not have been listed as a deduction from income. *In re Woodburn* 2008 WL 2777352 (Bankr. E.D. NC 2008) (Debtor listed an expense that stopped on day of filing and also listed an expense that debtor was not paying. Court said expenses should have been corrected to avoid misleading the court and creditors.) If the $173 was for repayment of money borrowed from the debtor's 401k plan, it is not a loan. The debtor borrowed his own money and there is no claim for repayment. *Bolen v. Adams* - -B.R- - 2009 WL 605270 (N.D. MS 2009); see also, *In re Scott,* 142 B.R. 126 (E.D. VA 1992). Additionally, voluntary contributions to 401k plans are not necessary expenses. *In re Lipford* 397 B.R. 320, FN6 (Bankr. M.D. NC 2008) ("Voluntary contributions to qualified retirement plan should not be considered when calculating disposable income.").

(21) Inaccurate Schedules I and J raise questions as to where the debtors money is going. *In re Prows,* 2007 WL 2897738 (Bankr. W.D. WA 2007) ("Schedule I and J figures are important to a U.S. Trustee's determination of substantial abuse under 11 U.S.C. § 707(b), and raise questions as to where the Defendants spent their income if not for these expenses. This could possibly lead to the discovery of further estate assets.").

(22) Cases holding the importance of accurate information are legion. This court (Mayer. J.) found in another case an unexplained $494 insurance deduction troubling. *In re Vansickel,* 309 B.R. 189, 216 (Bankr. E.D. VA 2004) ("Their [the debtors] schedules and statement of financial affairs are substantially accurate except for the troubling and unexplained

$494.00 insurance deduction.") As stated by Judge Sharp in *In re Solomon,* 277 B.R. 706, 712 (Bankr. E.D. TX 2002):

> [T]his Court believes that Creditors are entitled to have accurate bankruptcy schedules and full disclosure of the Debtor's actual financial condition. Whether an accurate disclosure would have made any difference in the conduct of this case is not before this Court at this time. What is clear is that the Debtor filed schedules of debts that he had manipulated to reflect something other than his true financial condition, and **whatever his motive**, that is not proper. ... An order of dismissal will be entered accordingly.
>
> (emphasis added)

(23)  The debtors have the ability to repay a portion of their debts, and the schedules and statement of current income and expenses do not accurately and reasonably reflect their true financial condition. Under the circumstances of this case, granting relief would be an abuse of the provisions of chapter 7 of the Bankruptcy Code.

Wherefore, the court should dismiss this case as an abuse pursuant to 11 U.S.C. §§ 707(b)(1) & (3).

May 13, 2009:                                           W. Clarkson McDow, Jr.
                                                        United States Trustee

                                                        /s/ Jack I. Frankel
                                                        Jack Frankel, Attorney
                                                        Office of United States Trustee
                                                        115 South Union Street
                                                        Alexandria, VA 22314
                                                        (703) 557-7229

## Certificate of Service

I hereby certify that on the 13th day of May, 2009, I mailed, first class, United States mail,

postage fully prepaid, a true copy of this motion, and notice of motion and hearing to:

| | | |
|---|---|---|
| Scott and Roseanna Fair<br>11025 Westmore Drive<br>Fairfax, VA 22030` | Jeffrey M. Sherman, Esq.<br>Semmes, Bowen & Semmes<br>1001 Connecticut Ave., Suite 1100<br>Washington, DC 20036 | Donald F. King, Esq.<br>Odin, Feldman & Pittleman<br>9302 Lee Hway., Suite 1100<br>Fairfax, VA 22031 |

    /s/ Jack Frankel
Jack Frankel